# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-05-004-SPS |
| ) | |
| TIMOTHY GLENN CONDICT, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER
## DENYING MOTIONS TO DISMISS

The Defendant Timothy Glenn Condict is charged herein with two counts of violating the Lacey Act, 16 U.S.C. §§ 3371-3378, by receiving wildlife (*i. e.*, whitetail deer) sold or transported in violation of Oklahoma law. *See* 16 U.S.C. § 3372(a)(2)(A). In duplicate Motions to Dismiss [Docket Nos. 39 & 41], the Defendant challenges the applicability of the Lacey Act to his "farm raised domesticated deer," which he contends are not "wildlife" as contemplated by the Lacey Act. For the reasons set forth below, the Court finds that the Lacey Act *is* applicable to the deer the Defendant is charged with receiving and that the Motions to Dismiss should therefore be denied.

The Defendant refers to the issue herein as jurisdictional, *i. e.*, he argues that the Court lacks subject matter jurisdiction of the charges against him because the Lacey Act does not apply to the deer he received. But the question here is not whether the Court has the power to hear the case, which arises under 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses

against the laws of the United States."), but instead whether the government can prove one of the essential elements of the crime, *i. e.*, that the deer are "wildlife" for purposes of the Lacey Act. *See* 16 U.S.C. § 3372(a)(2)(A) ("It is unlawful for any person . . . to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or *wildlife* taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law[.]") [emphasis added]. The issue is thus clearly not jurisdictional. *See, e. g., United States v. Tush,* 287 F.3d 1294, 1297 (10th Cir.), *cert. denied,* 537 U.S. 936 (2002) ("[T]he nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of § 844(i). Although courts frequently call it the 'jurisdictional element' of the statute, it is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime under the bombing statute."), *quoting United States v. Martin,* 147 F.3d 529, 531-32 (7th Cir. 1998). *See also United States v. Prentiss,* 256 F.3d 971, 982 (10th Cir. 2001) (en banc) ("Elements of the crime of arson in Indian country under 18 U.S.C. §§ 81 & 1152, such as the Indian/non-Indian statuses of Defendant and his victim, are jurisdictional only in the sense that in the absence of those elements, no federal crime exists. If the Government alleged, but failed to prove those elements, we would not say the district court was deprived of subject matter jurisdiction to hear the case; rather we would say Defendant was entitled to acquittal."), *citing Martin,* 147 F.3d at 531-32. Indeed, if the issue *were* jurisdictional, the Court would be required to assume what the Defendant wishes to dispute, *i. e.*, that the deer he received were in fact "wildlife" for purposes of the Lacey Act. *See, e. g., United States*

*v. Jeronimo-Bautista,* 425 F.3d 1266, 1267 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 1771 (2006) (for purposes of motion to dismiss for lack of subject matter jurisdiction, the court must "make all factual inferences in favor of the government, *assuming it could prove the facts alleged* against [the Defendant] at a trial.") [emphasis added], *citing United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir. 1994), *citing United States v. Sampson,* 371 U.S. 75, 78-79 (1962) (allegations in indictment are treated as true when reviewing Fed. R. Crim. P. 12(b) motion to dismiss). It is thus clear that what the Defendant is really challenging is not jurisdiction but instead the sufficiency of the government's evidence as to an essential element of the offense charged.[1]

Questions about the sufficiency of the government's evidence may not ordinarily be addressed by pretrial motion. *See, e. g., Hall,* 20 F.3d at 1087 ("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."), *citing United States v. King,*

---

[1] It should be noted that the statutory references contained in the information do not coincide with the substance of the factual allegations. For example, it is alleged in Count One that the Defendant "purchased and received in interstate commerce wildlife that the [Defendant], in the exercise of due care, should have known were transported, or sold in violation of the laws and regulations of the State of Oklahoma," a violation of 16 U.S.C. § 3372(a)(2)(A), but the statutory reference is to 16 U.S.C. § 3372(a)(1), which proscribes such conduct when "in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law[.]" These errors do not render the information defective, as there is no confusion in this case about which provision the Defendant is charged with violating. *See United States v. Malicoate,* 531 F.2d 439, 440 (10th Cir. 1975) ("An error in the citation of a statute, or its omission, is not grounds for dismissal of an indictment or information, nor is it grounds for reversal of a conviction unless the error or omission misleads the defendant to his prejudice."), *citing United States v. DePugh,* 452 F.2d 915, 921 (10th Cir. 1971), *cert. denied*, 407 U.S. 920 (1972). *See generally* Fed. R. Crim. P. 7(c)(3) ("Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.").

581 F.2d 800, 802 (10th Cir. 1978). However, where the pertinent facts are undisputed, and the government does not object, the Court may consider on pretrial motion whether the government is unable to prove its case at trial as a matter of law. *Id.* at 1088 ("Although we recognize that the preferred approach in testing the sufficiency of an indictment cautions against consideration of the strengths and weaknesses of the government's case through fact-finding pretrial hearings, *King,* 581 F.2d at 801-02, we read *Brown* and *Wood* as authority which allows a district court to dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case. Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt."), *citing United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991) and *United States v. Wood,* 6 F.3d 692 (10th Cir. 1993). *See generally* Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.").

It is not entirely clear that the facts underlying the Motions to Dismiss are undisputed. The Defendant contends that "[i]t is uncontested that the subject deer in this case were born and raised in captivity, fully domesticated, had never been outside of a fenced enclosure, and conversely, had never been 'wild.'" *See* Docket No. 42, p. 1. But there clearly *is* a dispute about the conclusion that the deer in this case "had never been wild," as the government contends that all whitetail deer are wildlife for purposes of the Lacey Act and are, therefore,

by definition "wild." On the other hand, the government apparently *does not* dispute the Defendant's other contentions, the essence of which is that the deer had never been *in the wild*. Nor does the government appear to object to consideration of these factual contentions even though they are not discernable from review of the information. The Court is therefore satisfied that it may properly address the merits of the Motions to Dismiss pursuant to Fed. R. Crim. P. 12(b)(2) under *Hall*.[2]

The Defendant argues that "farm raised domesticated deer" are not wild as that term is commonly used and that such animals cannot be considered "wildlife" under the Lacey Act. *See* 16 U.S.C. § 3371(a) ("The term 'fish or wildlife' means any wild animal . . .").[3]

---

[2] The Court has considered whether it should deny the Motions to Dismiss summarily because they raise no jurisdictional issues and the Defendant has already entered guilty pleas herein. *See, e. g., United States v. Hickok,* 907 F.2d 983, 985 (10th Cir. 1990) ("[B]y pleading guilty, *Hickok* waived all nonjurisdictional defenses."), *citing United States v. Davis,* 900 F.2d 1524, 1526-27 (10th Cir.), *cert. denied*, 498 U.S. 856 (1990) ("By entering a voluntary plea of guilty, Davis waived all nonjurisdictional defenses."), *citing United States v. Nooner,* 565 F.2d 633, 634 (10th Cir. 1977) ("This Court has itself on many occasions held that a voluntary plea of guilty is a waiver of all non-jurisdictional defenses.") [citations omitted]. The Court elects not to do so, however, because the Defendant has separately sought to withdraw his guilty pleas, and the issue raised in the Motions to Dismiss, *i. e.*, the alleged inability of the government to prove an essential element of the charged offense, raises the question of actual innocence and therefore could be asserted as "a fair and just reason for requesting the withdrawal." *See, e. g., Hickok,* 907 F.2d at 985 n.2 (listing the factors to be considered in addressing a motion to withdraw a guilty plea, including, *inter alia*, "whether or not the defendant has asserted his innocence[.]"), *citing United States v. Carr,* 740 F.2d 339, 343-44 (5th Cir. 1984), *cert. denied,* 471 U.S. 1004 (1985). *See generally* Fed. R. Crim. P. 11(d)(2)(B) ("A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal.").

[3] The Court has been presented no proof that the whitetail deer the Defendant is charged with receiving are in fact "farm raised domesticated deer," as the Defendant contends. Although the Defendant testified at the hearing on his motion to withdraw guilty plea that he raised and traded "farm deer," he said nothing that would indicate that the deer in question were in fact "farm deer." Indeed, the Defendant testified that he returned the deer to the seller because he had no idea where they came from, *i. e.*, they lacked tags that would properly identify them.

He attempts to avoid what appears to be an inherent circularity in this argument by referring to various statutes and regulations (both federal and state), which seem to equate "wild" with "in an unconfined state" or to distinguish between captive and non-captive animals, or between "wildlife" and "exotic livestock." The Defendant also argues that the absence of legal authority applying the Lacey Act to "farm raised domesticated deer" indicates that it should not be so applied, although it seems just as likely that such absence indicates *no* distinction under the Lacey Act between classes of deer. *See, e. g., United States v. Bernal,* 90 F.3d 465, 467 n.4 (11th Cir. 1996) (finding as "wholly meritless" the claim that animals bred in captivity are not "wildlife" for purposes of the Lacey Act).

The Court finds that the term "wildlife" as used in the Lacey Act does include "farm raised domesticated deer." This is supported by the language of the Lacey Act itself, which clearly indicates that otherwise wild animals do not cease to be wildlife simply because they or their progeny are no longer found in the wild. *See* 16 U.S.C. § 3371(a) ("The term 'fish or wildlife' means *any wild animal*, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, *whether or not bred, hatched, or born in captivity, and includes any* part, product, egg, or *offspring thereof.*") [emphasis added]. Section 3371(a) does not further define the term "wild," but it *is* defined elsewhere in the Lacey Act to mean "creatures that, whether or not raised in captivity, *normally are found in a wild state*[.]" 18 U.S.C. § 42(a)(2) [emphasis added]. Such a definition would clearly include the animals in question in this action, *i. e.*, whitetail deer.

Moreover, the legislative history of the Lacey Act supports this interpretation. At the time of its initial enactment in 1900, one of the primary purposes of the Lacey Act was the protection of game. *See* Robert S. Anderson, *The Lacey Act: America's Premier Weapon in the Fight Against Unlawful Wildlife Trafficking,* 16 Pub. Land L. Rev. 27, 37 (1995) ("Iowa Congressman John Lacey . . . intended the law to 'enlarge the powers of the Department of Agriculture,' and gave it three primary purposes: (1) to authorize the introduction and preservation of game, song, and insectivorous wild birds, (2) to prevent the 'unwise' introduction of foreign birds and animals, and (3) to supplement state laws for the protection of game and birds.") [footnotes omitted], *citing* H. R. Rep. No. 474, 56th Cong., 1st Sess. 1-2 (1900). This demonstrates that as initially enacted, the Lacey Act was intended to apply to and protect deer of all varieties, as it can hardly be argued that deer were not considered game at least at that time.[4] Further, although it is not clear exactly when deer farming became an industry in the United States, there is nothing to indicate that this did not occur after the initial enactment of the Lacey Act. Thus, if Congress had intended to distinguish between "wild deer" and "farm raised domesticated deer" (as the Defendant would categorize them) for purposes of the Lacey Act, it could easily have done so in any of the amendments thereto. That it has not done so is a clear indication that no such distinction is intended. *Cf. United States v. McCullah,* 76 F.3d 1087, 1112 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213

---

[4] The Defendant does argue that "farm raised domesticated deer" are livestock, and are therefore presumably "agricultural" rather than "game." But his argument is undercut by the use to which he puts some of his own "farm raised domesticated deer," *i. e.*, the Defendant testified at the hearing on the motion to withdraw his guilty plea that he raises such deer in part for use in private hunts on his ranch. Thus, at least for purposes of the Defendant's operations, the terms "livestock" and "game" are apparently *not* mutually exclusive.

(1997) ("To the extent that Congress wants a particular aggravating factor to receive enhanced weight in the sentencing process, it can provide for such enhancement in the statute itself. However, Congress elected not to do so, and the prosecutor cannot circumvent Congress's inaction.").

In summary, the Court finds that the term "wildlife" as used in the Lacey Act includes "farm raised domesticated deer." Assuming *arguendo* that the government's proof as to the "wildlife" element of an offense under 16 U.S.C. § 3372(a)(2)(A) is that the deer received by the Defendant are "farm raised domesticated deer," such proof is therefore not insufficient to support the charge. The Defendant's duplicate Motions to Dismiss [Docket Nos. 39 & 41] are therefore in all things DENIED.

**IT IS SO ORDERED** this 27th day of June, 2006.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**