# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIMOTHY GLENN CONDICT, ) <br> ) <br> Defendant. ) | Case No. CR-05-004-SPS |

## OPINION AND ORDER DENYING
## MOTION TO WITHDRAW PLEA OF GUILTY

On January 13, 2005, the Defendant Timothy Glenn Condict was charged by indictment with a felony count of conspiring to violate the Lacey Act, 16 U.S.C. §§ 3371-3378, and a misdemeanor count of violating the Lacey Act by receiving wildlife sold or transported in violation of Oklahoma law. *See* 16 U.S.C. § 3372(a)(2)(A). A superseding indictment added an additional misdemeanor count. After some plea negotiations, the government filed an information charging two misdemeanor violations of the Lacey Act. The Defendant pled guilty to these offenses, and the government thereupon moved to dismiss the indictments. But before he was sentenced, the Defendant filed a Motion to Withdraw Plea of Guilty [Docket No. 23], which for various reasons was not heard until February 13, 2006. The Defendant also filed duplicate Motions to Dismiss [Docket Nos. 39 & 41], by which he purported to challenge the Court's jurisdiction over the offenses contained in the information. Having determined that there is no question of jurisdiction and disposed of the

dismissal motions, the Court now addresses the merits of the Defendant's attempt to withdraw his guilty plea.

A defendant may not as a matter of right withdraw a guilty plea, even if he has not been sentenced. *See, e. g., United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000), *citing United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990), *cert. denied*, 498 U.S. 1122 (1991). Whether a defendant may be allowed to do so is within the discretion of the Court, *see, e. g., United States v. Wade*, 940 F.2d 1375, 1377 (10th Cir. 1991) ("Although motions to withdraw guilty pleas before sentencing are to be freely allowed and treated with liberality, . . . [i]t is within the sound discretion of the trial court to determine what circumstances justify granting such a motion."), *quoting United States v. Hickok*, 907 F.2d 983, 986 (10th Cir. 1990), *citing Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir. 1978), and it is his burden to "establish a 'fair and just reason' for the withdrawal of the plea." *Siedlik*, 231 F.3d at 748, *citing United States v. Black*, 201 F.3d 1296, 1299 (10th Cir. 2000), *quoting United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994). *See generally* Fed. R. Crim. P. 11(d)(2)(B)("A defendant may withdraw a plea of guilty. . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."). When determining what constitutes a "fair and just reason" for allowing the withdrawal of a guilty plea, the Court must consider the following factors: (i) whether the defendant has asserted his innocence; (ii) whether the government will be prejudiced if the motion is granted; (iii) whether the defendant has delayed in filing the motion; (iv) whether and to what degree the

Court will be inconvenienced if the motion is granted; (v) whether the quality of the defendant's assistance of counsel may be questioned; (vi) whether the plea was knowing and voluntary; and, (vii) whether the granting of the motion would cause a waste of judicial resources. *Hickok,* 907 F.2d at 985 n.2, *citing United States v. Carr,* 740 F.2d 339, 343-44 (5th Cir. 1984), *cert. denied,* 471 U.S. 1004 (1985). *See also Black*, 201 F.3d at 1299-1300, *citing Gordon*, 4 F.3d at 1572.

Four of the factors mentioned in *Hickok* would seem to weigh in favor of allowing the Defendant to withdraw his guilty plea in this case, or at least do not militate against it. For example, the Court will not be seriously inconvenienced by withdrawal, and the judicial resources that would thereby be wasted are minimal, *e. g.,* the change of plea hearing. Further, although the Defendant waited almost four months to seek withdrawal, his explanation for such delay does not appear to be unreasonable, *i. e.*, the Defendant moved to withdraw his plea promptly upon discovering that witnesses would support his supposed claims of innocence.

Nor does it appear that the government will be unduly prejudiced if the Defendant is allowed to withdraw his plea. The government argues that it concluded its investigation and is therefore no longer pursuing evidence of the Defendant's guilt. The Defendant's response is that "at a trial the vast majority of the evidence could be stipulated to by the parties," although elsewhere the Defendant admits that "the evidence heard at the February 13, 2006 hearing [on the Defendant's motion to withdraw his plea] is only a portion of that which would be heard at trial." In any event, if extensive additional discovery is needed by the

government in order to prepare for trial, this could be adequately addressed by a scheduling order; the government has not shown that any witnesses or evidence have become unavailable since the Defendant entered his guilty plea. Nor has the government shown that it has otherwise been prejudiced by the delay resulting from the Defendant's attempt to withdraw the plea.[1] Indeed, the government's hand may now be stronger than it was before, as a good portion of what the Defendant would present in defense at a trial has now been aired at the hearing on the Defendant's motion to withdraw his plea. The Court therefore concludes that the government would not be prejudiced if the Defendant is allowed to withdraw his guilty plea.

As the foregoing discussion demonstrates, at least four of the *Hickok* factors do not militate against allowing the Defendant to withdraw his guilty plea. Those factors do not, however, amount to "a fair and just reason for requesting the withdrawal." *See* Fed. R. Crim. P. 11(d)(2)(B). In this Court's view, they are simply factors to weigh when the issue of plea

---

[1] The government *does not*, for example, argue that it would be barred by the statute of limitations from reinstating the dismissed superseding indictment containing the felony charge against the Defendant if the plea agreement is breached. *See, e. g., United States v. Midgley,* 142 F.3d 174, 178 (3d Cir. 1998) (holding that reinstatement of dismissed charges was barred and observing that "the primary purpose of the statute of limitations is to protect the ability of the accused to present an effective defense to the charges against him. Consequently, applying the terms of [18 U.S.C.] § 3282 to dismissed counts of an indictment best fulfills that objective."). Inasmuch as the indictment was dismissed more than six months ago, *see* 18 U.S.C. § 3288, and the acts underlying the felony charge against the Defendant occurred more than five years ago, this would seem to be an issue here. *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). The Defendant *did* expressly waive the statute of limitations at his change of plea hearing, but it is at least arguable that he did so only for the purpose of allowing the filing of the information. In any event, the government does not assert prejudice in this regard, so perhaps the Defendant executed a more general waiver to which the Court is not privy.

withdrawal might otherwise be a close call. *See, e. g., United States v. Hyde,* 520 U.S. 670, 676-77 (1997), *cert. denied*, 522 U.S. 1065 (1998) ("Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish prejudice. Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a 'grave and solemn act,' which is accepted only with care and discernment.") [internal quotations omitted], *quoting* Advisory Committee's Notes on the 1983 Amendments to Fed. R. Crim. P. 32, 18 U.S.C. App., p. 794, *quoting United States v. Barker,* 514 F.2d 208, 221 (D.C. Cir. 1975), *quoting Brady v. United States,* 397 U.S. 742, 748 (1970). *See also Hickok,* 907 F.2d at 986-87 (quoting the same passage and explaining that it is no longer the case that the defendant should be allowed to withdraw a plea so long as the government cannot show prejudice). For purposes of determining whether there is "a fair and just reason for requesting the withdrawal" in this case, the most important factors are the other three mentioned in *Hickok*: (i) whether the Defendant has asserted his innocence; (ii) whether the Defendant was adequately represented; and, (iii) whether the plea was knowing and voluntary. 907 F.2d at 985 n.2. The Court finds that these factors *do* militate against allowing the Defendant to withdraw his guilty plea.

Initially, although he strenuously maintains his innocence, the Defendant has not raised a cognizable legal theory which would support a finding of innocence on the facts of

this case. *See Hickock,* 907 F.2d at 985 n.2 ("Under some circumstances, however, protestations of innocence do not meet the test. Even the '[a]ssertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty.'"), *quoting United States v. Buckley,* 847 F.2d 991, 998 n.4 (1st Cir. 1988) ("By definition, defendants who make *Alford* pleas do not deny their legal innocence. This does not mean they can withdraw these pleas willy-nilly."), *cert. denied,* 488 U.S. 1015 (1989). *See also United States v. Keiswetter,* 860 F.2d 992, 994 (10th Cir. 1988) ("Assertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty."). In a nutshell, the Defendant's argument is the following: (i) the Lacey Act provision under which he is charged requires proof of a violation of Oklahoma law; and, (ii) he did not violate Oklahoma law because he was excused from complying with it by state officials. In support of this argument, the Defendant did indeed present credible evidence at the hearing that state officials advised him that he did not need to comply with Oklahoma regulations requiring the testing of deer imported from other states. *See generally* Okla. Admin. Code § 35:15-11-18(a)(3) ("All persons importing cervidae shall meet the following requirements . . . Have a negative test for brucellosis within thirty (30) days prior to entry for all cervidae six (6) months of age or older."). In particular, the former Commissioner of the Oklahoma Department of Agriculture and the former State Veterinarian (now a federal official) testified that the Defendant and others engaged in the deer farming industry were so advised. This testimony raises three possible avenues of defense: (i) innocent intent, *i. e.*, that the Defendant lacked the requisite intent to violate the law; (ii) the

affirmative defense of official or public authority, *i. e.*, that the Defendant was authorized to violate the law by someone with the legal authority to do so; and, (iii) the affirmative defense of entrapment by estoppel, *i. e.*, that the Defendant was misled into violating the law by someone in authority. *See United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)("Several defenses may apply when a defendant claims he performed the acts for which he was charged in response to a request from an agency of the government . . . First, the defendant may allege that he lacked criminal intent because he honestly believed he was performing the otherwise-criminal acts in cooperation with the government. 'Innocent intent' is not a defense *per se*, but a defense strategy aimed at negating the *mens rea* for the crime, an essential element of the prosecution's case . . . A second possible defense is 'public authority.' With this affirmative defense, the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in [otherwise illegal] activity . . . A third possible defense in cases like the present one is 'entrapment by estoppel.' This defense applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation.") [citations omitted]. A *seriatim* review of these possible defenses demonstrates that the Defendant has not asserted his innocence in seeking to withdraw his guilty plea.

First, the question is whether the evidence cited above would support a finding that the Defendant lacked the requisite intent to violate the law. The Defendant argues that it does because he reasonably believed that what he did was legal, *i. e.*, he did not *knowingly*

receive imported deer in violation of Oklahoma law, and when he did discover a possible violation, he contacted the State Veterinarian and followed his instructions to return the deer immediately. Some of the evidence presented at the hearing would tend to support this version of the facts.[2] However, neither the applicable state regulations nor the Lacey Act provision under which the Defendant was charged requires proof of any specific intent. *See, e. g.,* Okla. Admin. Code § 35:15-11-18(a)(3) ("All persons importing cervidae shall meet the following requirements . . . Have a negative test for brucellosis within thirty (30) days prior to entry for all cervidae six (6) months of age or older."). *See also* 16 U.S.C. § 3372(a)(2)(A) ("It is unlawful for any person . . . to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law[.]"). The Defendant therefore need not have known that his conduct violated the law to constitute the offenses charged herein, and lack of such knowledge would not make him innocent. *See generally United States v. Blair,* 54 F.3d 639, 642 (10th Cir.), *cert. denied*, 516 U.S. 883 (1995) ("A specific intent crime is one in which an act was committed voluntarily and purposely with the specific intent to do something the law forbids. In contrast, a general intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident. In short, a specific intent crime

---

[2] On the other hand, not all of the evidence fully supports the Defendant's version of the facts. For example, there is evidence that the Defendant was aware that state officials other than the Commissioner and the State Veterinarian were continuing to enforce the importation regulations. There is also evidence that the Defendant returned the deer not because they violated his understanding with state officials but instead because he was unsatisfied with their small size.

is one in which the defendant acts not only with knowledge of what he is doing, but does so with the objective of completing some unlawful act.") [quotations and citations omitted]. *See also United States v. Hollis,* 971 F.2d 1441, 1452 (10th Cir. 1992), *cert. denied*, 507 U.S. 985 (1993) ("Where the law imposes criminal liability for certain conduct, a requirement that the conduct be 'willful' generally 'means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.'"), *quoting United States v. Dashney,* 937 F.2d 532, 538 (10th Cir.), *cert. denied,* 502 U.S. 951 (1991).

Second, regarding the official or public authority defense, as noted above the Defendant *did* present credible evidence that state officials advised him he did not have to comply with Oklahoma regulations regarding deer imported from other states. He did not, however, present anything to indicate that those officials had any actual legal authority to excuse non-compliance with those or any other regulations or statutes. *See, e. g., Baptista-Rodriguez,* 17 F.3d at 1368 n.18 ("The validity of [the official or public authority] defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority[.]") [internal citations omitted]. Nor did he present anything to indicate that those officials were empowered to unilaterally suspend the legal effect of any regulations; on the contrary, the evidence presented at the hearing indicates that the state officials in question: (i) lacked the authority to unilaterally alter the substance or effect of the applicable regulations; and, (ii) considered but never set in motion

the process for amending the applicable regulations to reflect the permission they apparently intended to grant to the Defendant and others engaged in the deer farming industry. There is simply nothing to indicate that the state officials on whom the Defendant relied had the actual legal authority to authorize what the Defendant did, *i. e.*, violate the Oklahoma importation regulations. *See United States v. Browning,* 630 F.2d 694, 702 (10th Cir. 1980), *cert. denied,* 451 U.S. 988 (1981) ("It has been held that one who relies on a legal interpretation by a governmental official assumes the risk that it is in error."), *citing Airmotive Engineering Corp. v. United States,* 210 Ct. Cl. 7, 535 F.2d 8, 11 n.3 (1976).

It may fairly be asked whether the Defendant was justified in relying on the *apparent* authority of the state officials who advised him that he need not comply with the Oklahoma importation regulations. While it is doubtful that *apparent* official authority provides a viable defense, *see, e. g., United States v. Singleton,* 144 F.3d 1343, 1353 (10th Cir. 1998), *citing United States v. Duggan,* 743 F.2d 59, 83-84 (2d Cir. 1984) (cited by *Singleton* for the proposition that "defense of public authority requires government agent to have actual authority to authorize statutory violation"); *Browning,* 630 F.2d at 702 ("It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction . . . It has also been held or said that 'the government could scarcely function if it were bound by its employees' unauthorized representations.'") [internal citations omitted], *quoting Goldberg v. Weinberger,* 546 F.2d 477, 480 (2d Cir. 1976), *cert. denied,* 431 U.S. 937 (1977); *see also United States v. Fulcher,* 250 F.3d 244, 254 (4th Cir. 2001), *cert. denied*, 534 U.S. 939 (2001) ("Accordingly, we adopt the

unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity."), *citing United States v. Pitt,* 193 F.3d 751, 758 (3d Cir. 1999), *cert. denied*, 541 U.S. 939 (2004) (stating that the public authority defense is limited "to those situations where the government agent in fact had the authority to empower the defendant to perform the acts in question."); *United States v. Matta-Ballesteros,* 71 F.3d 754, 770 n.12 (9th Cir. 1995), *cert. denied*, 519 U.S. 1118 (1997) (stating that where "a CIA agent could not lawfully authorize the violation of the federal drug laws," the defense of public authority was not available); *United States v. Holmquist,* 36 F.3d 154, 161 n.6-7 (1st Cir. 1994), *cert. denied*, 514 U.S. 1084 (1995) ("The nonexistent defense of apparent public authority . . . must not be confused with the potentially viable defense of actual public authority which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority."); *Baptista-Rodriguez,* 17 F.3d at 1368 n.18 ("[R]eliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law, which generally does not excuse criminal conduct."), even if it did, that defense would nevertheless be inapplicable here. *See, e. g., United States v. Baker,* 438 F.3d 749, 754 (7th Cir. 2006) ("We have not explicitly stated whether the public authority defense is limited to those situations in which the government official had actual authority, as opposed to simply apparent authority, nor do we need to make such a statement today to resolve [this] case."). It is well-settled that in Oklahoma, "public agents have no power to bind the state or any of its subdivisions by apparent

authority in excess of their actual authority." *General Motors Corp. v. Oklahoma County Bd. of Equalization*, 1983 OK 59, ¶ 17, 678 P.2d 233, 236. *See also Lingo-Leeper Lumber Co. v. Carter*, 1932 OK 735, ¶ 13, 17 P.2d 365, 368 ("Public officers have and can exercise only such powers as are conferred on them by law, and the State is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or constitution.") [quotation and citation omitted]. Further, it was the responsibility of the Defendant himself to know the extent of Commissioner Howard's authority to excuse compliance with the law. *See State ex rel. Com'rs of Land Office v. Frame*, 1948 OK 240, ¶ 15, 199 P.2d 215, 217 ("'[T]hose who deal with officers of the state are bound to know the extent of their authority. The state cannot be estopped by the unauthorized acts of its officers.'"), *quoting Smith v. State Industrial Accident Comm.*, 23 P.2d 904, 905 (1933). *See also Browning,* 630 F.2d at 702 ("It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction. It has been held that one who relies on a legal interpretation by a governmental official assumes the risk that it is in error. It has also been held or said that 'the government could scarcely function if it were bound by its employees' unauthorized representations.'") [internal citations omitted]. Thus, even if apparent public authority *were* a viable defense, the Defendant would be unable to rely on it on the facts of this case.

Third, the Defendant's claim that he was authorized by state officials to import deer without complying with the applicable regulations raises the question whether he may assert the defense of entrapment by estoppel. *See, e. g., United States v. Hardridge,* 379 F.3d 1188,

1192 (10th Cir. 2004), *cert. denied*, 126 S.Ct. 1465 (2006) ("The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments."), *quoting United States v. Nichols,* 21 F.3d 1016, 1018 (10th Cir.), *cert. denied*, 513 U.S. 1005 (1994). Were this a prosecution by the State of Oklahoma under its own statutes and regulations, such a defense would arguably have merit, although "there must be an active misleading by a government agent, and actual reliance by the defendant which is reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Apperson,* 441 F.3d 1162, 1204-05 (10th Cir. 2006), *citing Hardridge*, 379 F.3d at 1192. However, the federal government is not estopped from prosecuting offenses against the United States by any conduct other than its own. *See Hardridge,* 379 F.3d at 1194 ("[W]here, as here, the alleged unfairness to the defendant arises out of private conduct and not from government action, it is not the government that has denied due process."), *citing United States v. Orleans,* 425 U.S. 807, 815-17 (1976). *Cf. Browning,* 694 F.2d at 702 ("It is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction."). The Defendant does not contend that agents of the federal government contributed in any way to his failure to follow the dictates of state regulations, and the defense of entrapment by estoppel is therefore unavailable.

In summary, although he continues to profess his innocence, the Defendant has not advanced a legal theory that would support a finding of not guilty on the facts of this case. Thus, if he was adequately represented and pled guilty knowingly and voluntarily, the Defendant will not now be allowed to withdraw his plea. *See, e. g., Hickock,* 907 F.2d at 986 ("Hickok's only basis for seeking withdrawal of his plea appears to be his change of heart. We agree with the Ninth Circuit that change of heart does not pass muster."), *citing United States v. Rios-Ortiz,* 830 F.2d 1067, 1070 (9th Cir. 1987) ("[T]his court has not overturned a denial of a motion to withdraw a guilty plea absent something more than the defendant's change of mind."). *See also Brady*, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the . . . case or the likely penalties attached to alternative courses of action.").

The Defendant's explanation of why he pled guilty is the following. Upon being charged herein, he advised his attorneys about his conversations with state officials, *i. e.*, that he and others in the deer farming industry were advised that the Commissioner would not require compliance with the importation regulations except for deer imported from Michigan. The Defendant's attorneys did not believe him, and apparently there was some difficulty in locating any witnesses who could confirm the story. In any event, the Defendant's attorneys engaged in plea negotiations with the government, and eventually the Defendant agreed to enter a guilty plea. He claims that when he did so, he expected that he would be pleading guilty to a minor offense such as a "record-keeping violation" and paying an administrative

fine. He was therefore surprised to learn when his plea was taken that the government had filed an information containing misdemeanor charges involving possible jail time. The Defendant was confused and uncertain of what to do; despite knowing he was innocent, he had neither the evidence nor the resources to contest the charges. Consequently, the Defendant felt he had no alternative but to plead guilty to the charges in the information. He realized it was a mistake almost immediately, but he was not able to seek withdrawal of the plea until later when witnesses who could support his defense came forward or were otherwise discovered.

Initially, the Court finds that the Defendant was adequately represented by counsel throughout this case in general and at the plea hearing in particular. When he was initially charged, the Defendant employed a well-respected local attorney whose qualifications include previous service as an Assistant United States Attorney and current service as an Adjunct Settlement Judge for the Court. He practices regularly in this Court on a variety of matters and is a seasoned advocate for persons accused of federal crimes. He negotiated dismissal of the felony charge with the government and actively counseled the Defendant at his plea hearing. The Defendant's attorney has also been assisted in these proceedings by another attorney (now co-counsel for the Defendant, but whose advice was apparently available to the Defendant even before the plea hearing) with obvious expertise in wildlife law. Both these attorneys support the Defendant's version of events, *i. e.*, they readily admit they did not believe his story at first, but came to do so only when witnesses came forward.

Nevertheless, it would be patently absurd to conclude that either of these fine lawyers failed to adequately represent the Defendant at any time in these proceedings.

That said, the remaining question is whether the Defendant's guilty plea was knowing and voluntary. Because it is among other things a waiver of the sacred right to a trial, a guilty plea "must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994), *quoting McMann v. Richardson*, 397 U.S. 759, 766 (1970) [quotations omitted]. In order for a plea to be valid, it must "represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Kramer*, 168 F.3d 1196, 1200 (10th Cir. 1999), *quoting United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996) [internal citations omitted]. It is clear that the guilty plea entered by the Defendant in this case meets these standards.

At the plea hearing, the Defendant was advised of the charges against him and the range of punishment. He indicated he understood both and wanted to plead guilty. The Court advised the Defendant that his plea must be voluntary and asked a number of questions to determine if it was. The Defendant answered all of these questions satisfactorily, and later specifically advised the Court that his guilty plea was made voluntarily and completely of his own free choice; he did not then or at any other time advise the Court that he felt he had no alternative but to plead guilty to offenses he did not commit. The Court asked the attorneys about the terms of the plea agreement, and the Defendant indicated that what they told the Court was his understanding as well. He specifically advised the Court that there

was nothing previously discussed that he had thought was going to be part of the agreement, *e.g.*, pleading guilty to a record-keeping violation and paying a fine. He was appropriately advised about the federal sentencing guidelines and the possible sentence thereunder. The Defendant seemed concerned about the possibility of a jail sentence and specifically asked the Court if a one-year sentence was the maximum. After being advised that it was, the Defendant indicated he was prepared to enter a guilty plea.[3] The Defendant confirmed that he had told his attorney everything he knew about the charges against him, that his attorney was fully informed about the charges, that he was satisfied with his attorney's services, and that he felt his attorney had done all that could be done to assist him. Significantly, he did not advise the Court that he had a defense he could not assert because his attorney did not believe him, or that his attorney was otherwise not zealously representing him. The Defendant was advised of his trial rights, including the right to use the Court's power to compel witnesses in his favor; the Defendant indicated he understood and said nothing about being unable to locate witnesses who would confirm his story. The Defendant advised the Court that he understood the need for a factual basis for a guilty plea, and then proceeded to provide one. He specifically indicated that he knew at the time of the plea hearing that his

---

[3] Of course, when the pretrial sentence investigation report was prepared, the Defendant learned that a jail sentence would in all likelihood be recommended. If this motivated his attempt to withdraw his guilty plea, it is an insufficient basis. *See, e. g., United States v. Savage*, 891 F.2d 145 (7th Cir. 1989) (finding no abuse of discretion to deny motion to withdraw plea when defendant merely desires shorter sentence than is proper for crimes committed); *United States v. Huff*, 873 F.2d 709, 711-12 (3d Cir. 1989), *cert. denied*, 531 U.S. 890 (2000) (rejecting attempt by defendant to withdraw plea when he claimed that he failed to realize exposure and possible sentence under the sentencing guidelines).

actions violated regulations of the State of Oklahoma, and that he was responsible for knowing the regulations at the time he violated them. He agreed that he thought the deer he imported would be tested, but took no action to find out if they were. At no time did he advise the Court that he believed he was not required to comply with the Oklahoma regulations, or that anyone had told him he did not have to comply.

The Defendant's attorney advised the Court there was no reason to believe the Defendant was incompetent, either at the time he committed the offenses charged or at the time of the plea hearing. Indeed, the Defendant is by all appearances a rational and intelligent man; he has attended college, managed his own business and interfaced extensively with industry and government officials. He swore to tell the truth, provided the Court with the information set forth above, and twice advised the Court that he was pleading guilty to the charges contained in the information. The Defendant's only real complaint with the plea hearing was that he was confused and under pressure about what to do, but this would not vitiate the knowing and voluntary nature of his guilty plea. *See, e. g., United States v. Davis,* 900 F.2d 1524, 1526-27 (10th Cir.), *cert. denied*, 498 U.S. 856 (1990) ("We agree with the observation of the Ninth Circuit in *Montilla*: 'A forced choice between asserting a constitutional right at trial and accepting the government's offer, while undoubtedly difficult, is not unconstitutional.'"), *quoting United States v. Montilla,* 870 F.2d 549, 553 (9th Cir. 1989). The Court therefore finds that the Defendant's guilty plea *was* knowing and voluntary. *See, e. g., Carr,* 740 F.2d at 345 (cited in *Hickok*, *Gordan* and *Black* and finding: "Appellant had very experienced attorneys. He was intelligent, and as a licensed

life insurance agent with a college background he was able to understand the elements and nature of the offense to which he plead.  In response to the district court's inquiries, he acknowledged that: 1) he 'fully and thoroughly underst[oo]d the charges against [him';] 2) he 'underst [oo]d the elements of the offense'[;] 3) he had 'discuss[ed] in detail the charges with [his] attorney'[;] and 4) he admitted 'doing what he was charged with doing.'") [citations omitted].

## Conclusion

For the reasons set forth above, the Court finds that the Defendant has not shown a "fair and just reason" for requesting withdrawal of his guilty plea herein.  Accordingly, the Defendant's Motion to Withdraw Plea of Guilty [Docket No. 23] is hereby DENIED.

**IT IS SO ORDERED** this 28th day of June, 2006.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**